No. 16,549.

CITIZENS STATE BANK OF CORTEZ *v.* PRITCHETT.
(231 P. [2d] 462)

Decided April 30, 1951.

Messrs. MILENSKI & ARMSTRONG, for plaintiff in error.

Messrs. GARRISON & DILTS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

As plaintiff, Pritchett alleged that on December 27, 1947, he received a check of that date drawn on defendant bank by J. T. Hay on the account of the Hay Mercantile Company in the amount of $600; that on March 2, 1948, he presented the check to the bank for payment; that at the time, he was advised the check was good and he received $300 in cash, and a deposit ticket for the remaining $300 which was deposited to his account; that thereafter the bank notified him that the check was short and that his account was charged with the sum of $600; that the acceptance of the check was unqualified and unconditional, and that the bank was not justified in charging back the amount of the check against his account; that the bank was negligent in that it failed to ascertain the condition of the drawer's account before acceptance of the check for cash and deposit; he prayed for judgment in the sum of $600.

The defendant bank answered, alleging that the plaintiff presented the check; that he deposited it for collection and received $300 against his account in said bank; that before the close of business on March 2, 1948, the day of the deposit, defendant returned the check to plaintiff, not accepting it for payment and charged back the deposit against plaintiff's account. The bank further alleged that the charging back process was in accordance with the rules and regulations under which the account of plaintiff had been received by the bank and according to the general practice of banks in regard to checks accepted for collection or presented for acceptance by the bank; it denied that any acceptance of the check had ever been made by it, and denied any negligence on its part in relation to the transaction.

Trial was had to the court on October 21, 1949 and judgment entered in plaintiff's favor for the amount prayed for in his complaint.

There is only one conflict in the testimony. Plaintiff testified that on March 2, 1948, at about noon, he presented the check in person to a teller at the teller's cage in defendant bank and asked the teller if the check was good. Her reply was, "What do you want, cash or deposit?" He said he wanted $300 in cash and the balance deposited to his account. The teller, Eloise Alexander, testified that plaintiff did not ask whether the check was good; that as she remembered, she deposited the check as he asked; that she did not check with the bookkeeping department; that she paid plaintiff $300 in cash and deposited the balance to his account; that she was acquainted with J. T. Hay, the maker of the check and the owner of the Hay Mercantile Company, and was aware of the fact that he was indebted to the bank; that she did not make a practice of discussing with a depositor the condition of the account of the maker of a check that was presented for payment. On cross-examination, she further testified that she knew the check was not good when plaintiff presented it, and when asked why she did not tell him, stated, "It is not my practice to tell people checks are good or not. I never do."

Plaintiff further testified that he usually mailed in his deposits to the bank, but that he had heard that Hay was about to go bankrupt and he called at the bank in person to get the check cashed and to see if it was good and said, "No, to be honest, I thought maybe that check was not good."

If material, this conflict in the testimony was resolved in plaintiff's favor. Counsel for plaintiff in error bank states that the bank has not attempted to hold or to show that in any way plaintiff acted fraudulently or with bad faith in attempting to obtain funds for the check sixty days after the check was made. Counsel further says that, "However, the case smacks of such since the holder of the check had knowledge that the maker had taken bankruptcy, and that the possibilities of collection of the check would be difficult." As we

read the record, there is nothing to bear out the statement that plaintiff knew that the maker of the check had taken bankruptcy. The fact that plaintiff testified that he had heard rumors about bankruptcy and doubted if the check was good, no doubt caused the trial court to believe that it would be a natural thing for him to inquire about the check at the time it was presented. There is no suggestion of fraud in the acts of plaintiff in the receiving, holding and presentment of the check. The check was bona fide on its face and drawn on an account in the bank where presented.

The bank relies upon the contract disclosed on the signature card signed by plaintiff at the time he opened an account with the bank. This contract is in small print on the signature card and is as follows: "The bank is hereby authorized to recognize the signatures executed herewith in payment of funds or transaction of any other business of said party. In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credit. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

In the unusual situation here presented, we have no precedent to follow. First impression would tend to lead us to say that when, as here, a check was presented on the bank itself, and the bank honored the check to the extent of paying part of it in cash, such action was an unqualified acceptance thereof. Many of the adjudi-

cated cases disclose such conclusion; however, in nearly all of the decisions of this and other jurisdictions, as well as by the text writers, it is held that in these matters the intention of the parties must control, and it is further pointed out that "contracts, agreements, transactions between parties should have operation and effect according to their intention." We will not burden this opinion with the many citations here applicable, but content ourselves with our ruling in the case of *Snyder v. Hamilton National Bank*, 65 Colo. 24, 172 Pac. 1069, and the cases therein cited and analyzed, supporting this well-settled rule.

The present record does not disclose anything whatever to indicate the bank's intention to treat this transaction differently from any other anticipated by its contract with plaintiff over his signature as hereinabove set out.

Plaintiff, by argument here, attempts to support his allegations of negligence on the part of the bank. In good conscience, we do not agree with his contention. If the matter of handing plaintiff cash and giving him a deposit slip for the balance of the worthless check could be called negligence, it was not, in this case, to the injury of plaintiff. The bank did nothing in the entire transaction to cause plaintiff to suffer a loss. He was in no worse condition afterwards than he was before he presented the worthless check to the bank. When the bank, in its usual course of dealing with its well-known customers, extended him the courtesy that obtains in hundreds of such transactions during bank hours, it should not be penalized unless there was an express agreement to alter the existing contract, and unless the bank by such alteration agreement unqualifiedly and absolutely accepted the check. There must necessarily be a clearly indicated intention on the part of the bank to assume the obligation of the maker of the check. Under the contract here prevailing, checks were received subject to credit at close of the business day. We find no indication that

there was an intention on the part of the bank to handle the check in question in any other manner. In this case the intention of the parties is indicated more by what was done or not done, than by the conversation hereinbefore set out. The evidence discloses that the bank handled this check at the close of business on the day presented in the same manner that not only was provided in the written contract, but according to custom and usage long established in the commercial banking field.

Had the bank, through some inadvertence, carelessness or negligence, handled this transaction so as to have caused plaintiff a loss, there would be but one answer to the situation, namely, unquestionable liability on the part of the bank to the extent of plaintiff's loss. It is to be noted that the check in question was dated December 27, 1947 and, for some undisclosed reason, carried by the plaintiff until March 2, 1948, at which time he presented it in person, changing from his usual custom of mailing in his deposits to the bank. The record is silent as to the condition of the account of the maker of the check at the time of the date of the check and the intervening period. For aught we know, there might have been sufficient funds in the account during that period to have satisfied the check on presentment, and when plaintiff failed to use reasonable promptness, he should not, in fairness and equity, be allowed to recover from the bank for a loss which it did not occasion. To hold otherwise would be to leave the business of commercial banking in a state of hopeless confusion.

Our difficulty, and, we perceive, the difficulty of the learned trial judge, is presented by the fact that here we have the unusual situation of where the check on presentment was paid partly in cash and part received for deposit. In the absence of any clear and unmistakable intention to do otherwise, in equity and good conscience, we must, and do, hold and determine that this was a deposit without absolute acceptance of the check

by the bank, and is to be governed by the existing agreement relative to deposits. The bank not having altered this agreement, and having occasioned no loss to the plaintiff, cannot be held to be responsible; therefore, the judgment must be, and is, reversed.

Mr. Justice Stone and Mr. Justice Hays dissent.

Mr. Justice Stone dissenting.

Had plaintiff, as a customer of defendant bank, made deposit in the usual manner of the check drawn on the depository bank, I think there would be a presumption that it was accepted conditionally according to the provisions recited on the signature card. On the other hand, had plaintiff taken the check to the bank, asked if the check was good and said he wanted it paid in cash, the payment of the money by the bank would have closed the transaction and the bank would have had no recourse against plaintiff, unless the check was found not genuine or plaintiff found guilty of fraud.

Here we have an unusual situation. The fact that plaintiff presented the check otherwise than in the usual manner of deposit and was paid part of it in cash would be indicative of an independent transaction. The fact that he made deposit of part of it would be indicative of deposit in the usual way. Statements made in connection with the transaction was, I think, a question of fact to be determined by the court from all the evidence. We are bound by that determination. Ann. 15 A.L.R. 709; *Fine v. Harney County National Bank,* 181 Ore. 411, 170 P. (2d) 365.

Mr. Justice Hays concurs in this dissent.